UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GOULD, | No. 1:24-cv-00699-JLT-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| COUNTY OF FRESNO, | (ECF No. 31) |
| Defendant. | |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.  Plaintiff is a civil detainee under the Sexually Violent Predator Act, Cal. Welfare & Institutions Code § 6600, et seq.

Currently before the Court is Plaintiff's motion for summary judgment, filed February 12, 2026.  (ECF No. 31.)

**I.**

**BACKGROUND**

This action is proceeds on Plaintiff's due process claim against the County of Fresno in violation of the Fourteenth Amendment for subjecting him as a civil detainee to conditions of confinement to the same conditions as those of his criminal counterparts and more restrictive than those at Coalinga State Hospital.  Jones v. Blanas, 393 F.3d 817, 932 (9th Cir. 2004).

1

Defendant filed an answer to the complaint on May 5, 2025.  (ECF No. 24.)

On May 6, 2025, the Court issued the discovery and scheduling order.  (ECF No. 25.)

On February 2, 2026, Plaintiff filed the instant motion for summary judgment.  (ECF No. 31.)  Defendant filed an opposition on February 18, 2026, and Plaintiff filed a reply on March 30, 2026.[1]  (ECF Nos. 32, 35, 36.)

## II.

## LEGAL STANDARD

### A.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

---

[1] Defendant did not file a motion for summary judgment and the deadline to do so expired on March 6, 2026.  (ECF No. 25.)

2

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

Plaintiff is currently housed at Coalinga State Hospital ("Coalinga") in Coalinga, California.  Plaintiff alleges the events in the complaint occurred while Plaintiff was housed at the Fresno County Jail.  Plaintiff names the County of Fresno as the sole Defendant.

Plaintiff alleges his rights were violated when he was awaiting proceedings under California's SVPA (Sexually Violent Predators Act) and being detained in the custody of the Fresno Sheriff as a civil detainee.

When Plaintiff returned back to Coalinga in October 2021, the hospital was on modified program because of COVID and movement throughout the hospital was restricted.  Plaintiff was in quarantine and unable to get to the law library.

In 2023, when COVID was no longer considered a pandemic, Coalinga lifted its modified program and all movement and programing returned to normal.  Beginning in 2023, Plaintiff has had serious medical issues which have caused him to be housed in the medical unit.  While dealing with the medical issues Plaintiff did not have time to do any legal work.   Due to Plaintiff's numerous outside medical appointments, hospitalization, and placement in the medical unit, his property (which included all of his documents from the county jail) were held in storage.

When Plaintiff arrived at Fresno County Jail, he was booked as a civil detainee on the SVPA and housed as a civil detainee. He was first housed in AJ3G3, a 12-man dorm SVP unit. It had an open living room and dayroom. The unit had TVs, phones, tables, beds, toilets, sinks in the open day room. During Plaintiff's seven months in AJ3G3, Plaintiff did not get any recreation

3

time. Deputies never asked Plaintiff if he wanted to go to recreation. After seven months, Plaintiff was returned to Coalinga.

On August 5, 2020, Plaintiff was moved from AJ3G3 to AJ2G3, and then six days later on August 11, 2020, he was moved to MJ2B4.  MJ2B4 is a medical unit, two-bedroom dorm.  Then Plaintiff moved from MJ2B$ to MJ2A7, another dorm in the medical unit with six beds.  Plaintiff remained in MJ2A7 until December 1, 2020, when he was moved to AJ2F2.  Plaintiff remained in AJ2F2 until he left the county jail and was sent back to Coalinga State Hospital.

While Plaintiff was housed at AJ2F2, deputies on many occasions would not turn on the TV.  The shower would clog and it would take a couple of days for a plumber to come and unclog it. It caused unsanitary conditions and Plaintiff would have to stand in greywater while he showered. Plaintiff asked for cleaning supplies but was not provided with supplies.

While housed at Fresno County Jail, Plaintiff claims that he was subject to same policies as those under the criminal process. Plaintiff was not given more consideration as a civil detainee under jail policies. Plaintiff alleges that he was subjected to the same policies as those under the criminal process, as follows: recreation, visiting, dayroom time, religious services, restraints and escort, cleaning opportunities, the Edovo Program (he was not given more usage).

Plaintiff was restricted from the use of the legal kiosk because he was not a pro per.

Plaintiff challenges that Fresno County Jail does not allow many of the amenities that Plaintiff is permitted to have while housed at Coalinga. At Coalinga, Plaintiff is permitted to have personal electronics, such as a TV, coffee pot, DVD, etc., but while at Fresno County Jail he is not permitted to have these items. At Coalinga, Plaintiff is permitted to have personal clothes, go to the gym to exercise up to six hours a day, go outside for eleven hours, go to the sports court, but while at Fresno County Jail he is not permitted to have these items. At Coalinga, Plaintiff is permitted to go to canteen every day, access the grill, have cleaning supplies, but while at Fresno County Jail he is not permitted to have these items. At Coalinga, Plaintiff has access to the library daily, has access to the computer lab, can make confidential calls, send confidential mail, can get clean clothing daily, clean bedding weakly, but while at Fresno County Jail he is not permitted to have these items. At Coalinga, Plaintiff could exchange meal main course, had access to

condiments, has access to a microwave, and a refrigerator, but while at Fresno County Jail he is not permitted to have these items. At Coalinga, Plaintiff could participate in sex offender treatment and other treatment and education courses, but while at Fresno County Jail he does not have these services.

Plaintiff alleges that the deficient policies or lack of sufficient polices regarding housing and treatment of those held under California Welfare and Institution Code §6600 made the conditions of confinement similar to and more restrictive than imposed on the criminal population of the jail. Plaintiff alleges that liability attaches to the deputies working on Plaintiff's housing unit. Since the conditions of confinement for SVPs are essentially the same as the criminal counterparts, Plaintiff's conditions of confinement are punitive and in violation of Due Process. There was no legitimate nonpunitive justification.

**B.      Statement of Undisputed Facts[2]**

1.      Plaintiff was booked into the county jail on or about January 21, 2020.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 1.)

2.      Plaintiff was booked into under California Welfare & Institutions Code §6600, know [sic] as the Sexually Violent Predator Act.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 2.)

3.      Those booked into the county jail solely under the SVPA are classified as civil detainees.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 3.)

4.      Plaintiff was classified as a Civil Detainee.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 4.)

5.      Plaintiff was first house [sic] in AJ3G3.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 6.)

6.      AJ3G3 was a 12-man dorm.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 7.)

7.      While Plaintiff was housed in AJ3G3, it only housed the same class of inmates. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 8.)

---

[2] Hereinafter referred to as "UF."

5

8. Plaintiff was moved from AJ3G to AJ2G3. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 10.)

9. Plaintiff was housed in AJ2G3 from August 6, 2020, until he was moved to MJ2B4 on August 11, 2020. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 11.)

10. MJ2B4 is a medical unit. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 12.)

11. While Plaintiff was in MJ2B4 he was housed with the same class. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 13.)

12. Plaintiff was moved to AJ2F2 on or about December 1, 2020. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 13.)

13. Housing unit AJ2F2 was a 12-man dorm. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 15.)

14. While housed in AJ2F2, Plaintiff was only housed with his classification. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 16.)

15. While Plaintiff was housed in AJ2F2 he received the same amount of phone time criminal's [sic] held in unit AJ2F2. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 20.)

16. While Plaintiff was housed in AJ2F2 he received the same amount of recreation time criminal's [sic] held in unit AJ2F2. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 21.)

17. While Plaintiff was housed in AJ2F2 he received the same amount of TV viewing time criminal [inmates of comparable security classifications] held in unit AJ2F2. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 22.)

18. While Plaintiff was housed in AJ2F2 he received the same amount of shower time criminal's [sic] held in unit AJ2F2. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 23.)

19. While Plaintiff was housed in AJ23G3 he received the same amount of phone time criminal's [sic] held in unit AJ23G3. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 24.)

20. While Plaintiff was housed in AJ23G3 he received the same amount of recreation time criminal's [sic] held in unit AJ23G3. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No.

25.)

21.    While Plaintiff was housed in AJ23G3 he received the same amount of TV viewing time criminal [inmates of comparable security classifications] held in unit AJ23G3.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 26.)

22.    While Plaintiff was housed in AJ23G3 he received the same amount of shower time criminal's [sic] held in unit AJ23G3.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 27.)

23.    The Sheriff's Department Policy for SVPs making outgoing phone calls is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 41.)

24.    The Sheriff's Department Policy for SVPs access to canteen is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 42.)

25.    The Sheriff's Department Policy for SVPs access to reading material is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 43.)

26.    The Sheriff's Department Policy for SVPs access to clothing exchange is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 44.)

27.    The Sheriff's Department Policy for SVPs access to cleaning supplies is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 45.)

28.    The Sheriff's Department Policy for SVPs filing grievances is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 46.)

29.    The Sheriff's Department Policy for SVPs filing Inmate Requests is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 47.)

30.    The Sheriff's Department Policy for SVPs access to recreation is the same for those held under the criminal process.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No.

48.)

31. The Sheriff's Department Policy for SVPs access to visitation is the same for those held under the criminal process. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 49.)

32. The Sheriff's Department Policy for SVPs access to religious services is the same for those held under the criminal process. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 50.)

33. The Sheriff's Department Policy for SVPs being restrained is the same for those held under the criminal process. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 51.)

34. During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff to have or purchase personal electronics, such as TV, radio, coffee pot, watch, CD player, DVD player. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 29.)

35. During the time Plaintiff was in the county jail, jail policies did not allow Plaintiff to have or purchase personal clothes, shoes, boots and hats. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 30.)

36. During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff outside recreation time on grass (as the jail does not have any grass). (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 32.)

37. During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff could not make or receive confidential calls other than to his assigned attorney. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 35.)

38. During the time Plaintiff was in the county jail, jail policies did not allow Plaintiff to get or exchange his clothing daily. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 36.)

39. During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff to use a microwave. (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 40.)

40. During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff to send confidential mail to his family.[3] (D's Resp. to Pl.'s Req. for Admis., Set One,

---

[3] It is disputed as to whether the jail reads Plaintiff's mail.

8

Req. No. 63.)

41.   During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff to send confidential mail to his friends.[4]  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 64.)

42.   During the time Plaintiff was in the county jail, jail policies did not allow the Plaintiff to make confidential calls to his family.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 65.)

43.   During the time Plaintiff was in the county jail, jail policies did not allow Plaintiff to make confidential calls to his friends.  (D's Resp. to Pl.'s Req. for Admis., Set One, Req. No. 66.)

44.   Plaintiff was confined in the Fresno county jail from January 21, 2020 to sometime in October of 2021. When he was in the county jail the COVID-19 Pandemic hit in March of 2020.  (ECF No. 1.)

45.   Plaintiff's complaint was filed on June 14, 2024.  (ECF No. 1.)

46.   During the time Plaintiff was in the county jail, he did not have access to a courtyard or sports yard that had grass, trees and shrubs, as the jail does not have grass.  (Pl.'s Decl. ¶ 33.)

47.   As to the Sheriff Department's Policy and Procedures Manual on booking an inmate into the county jail, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 4.)

48.   As to the Sheriff Department's Policy and Procedures Manual on classifying an inmate who is being held under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 5.)

49.   As to the Sheriff Department's Policy and Procedures Manual on housing an inmate who is being held under the SVPA, the jail does not maintain policies or procedures

---

[4] It is disputed as to whether the jail reads Plaintiff's mail.

9

specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 6.)

50.     As to the Sheriff Department's Policy and Procedures Manual on visiting for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 7.)

51.     As to the Sheriff Department's Policy and Procedures Manual on recreation for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 8.)

52.     As to the Sheriff Department's Policy and Procedures Manual on dayroom time for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 9.)

53.     As to the Sheriff Department's Policy and Procedures Manual for making phone calls for someone being under the SVP A, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 10.)

54.     As to the Sheriff Department's Policy and Procedures Manual for religious services for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 11.)

55.     As to the Sheriff Department's Policy and Procedures Manual for clothing exchange for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 12.)

56.     As to the Sheriff Department's Policy and Procedures Manual for canteen for someone being under the SVPA, the jail does not maintain policies or procedures specific to

inmates being held under the SVPA. (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 13.)

57.    As to the Sheriff Department's Policy and Procedures Manual for transporting someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 14.)

58.    As to the Sheriff Department's Policy and Procedures Manual for restraints for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 15.)

59.    As to the Sheriff Department's Policy and Procedures Manual for escorting someone being held under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 16.)

60.    As to the Sheriff Department's Policy and Procedures Manual for sending and receiving mail for someone being under the SVPA, the jail does not maintain policies or procedures specific to inmates being held under the SVPA.  (D's Resp. to Pl.'s Req. for Prod. of Docs., Set One, Req. No. 17.)

**C.    Analysis of Plaintiff's Motion for Summary Judgment**

As stated above, Plaintiff alleges that the Fresno County Jail's with regard to the following conditions of confinement were punitive in nature: (1) dayroom time; (2) shower time; (3) clothing exchange; (4) recreation and visitations; (5) canteen access; (6) telephone calls; (7) mail; (8) restrictions on religious exercise; (9) access to reading materials; (10) television; (11) access to cleaning supplies; (12) escorts and restraints; (13) personal items; (14) "restaurant/grill" access; (15) computers; (16) extra access to laundry services; and (17) access to microwave and refrigerator.

Plaintiff moves for summary judgment because the conditions of confinement at Coalinga State Hospital were identical to, similar to, or more restrictive than those held under the criminal

11

process at the county jail.

In opposition, Defendant argues there exist numerous disputes as to material facts as the conditions of confinement which Plaintiff challenges are not intended to punish and are instead reasonably related to legitimate, non-punitive governmental objectives in maintaining safety, security, and order within the county jail.

In response, Plaintiff argues Defendant has failed to rebut the presumption of punishment that arises under Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004), and King v. County of Los Angeles, 885 F.3d 548 (9th Cir. 2018 ).[5]

Under the Due Process Clause of the Fourteenth Amendment, "an individual detained under civil process ... cannot be subjected to conditions that 'amount to punishment.' " Jones, 393 F.3d at 932 (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)). We held in Jones that individuals who are civilly detained pending commitment proceedings under the SVPA are "entitled to protections at least as great as those afforded to a civilly committed individual[.]" Id. Jones established two presumptions: First, conditions of confinement are presumptively punitive if they are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." Jones, 393 F.3d at 932; see also Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982) (requiring civil detainees be given "more considerate treatment" than criminal detainees); King v. County of Los Angeles, 885 F.3d at 557. Second, conditions of confinement are presumptively punitive if "an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment." Jones, 393 F.3d at 933; King, 885 F.3d at 557. If either

---

[5] Plaintiff "lodges a standing objection to the County's application of 'penological interests' as a basis for determining the appropriateness of denying Plaintiff his constitutionally required 'more considerate treatment' for relevance. (ECF No. 35 at 19.) Plaintiff submits that " 'penological interests' and civil detainee's should not be associated in any way[.]" (Id. at 20.) Plaintiff's objection is overruled. While Defendant makes passing reference to legitimate penological purposes (ECF No. 32 at 8-12, 15, 18, 24), the opposition correctly states and applies the applicable standard under Bell of whether the County had a legitimate, non-punitive governmental reason (ECF No. 32 at 5, 12, 13, 16, 21, 22, 23). Indeed, security concerns are a common justification for limiting rights in civil detention settings, and while the term "penological" may be rooted in the criminal justice system, its legal reasoning is equally applicable to civil detainees when the detention involves security and order concerns. Ultimately, the dispositive issue is whether the restriction is justified by legitimate administrative or security concerns and not for punitive reasons. See Turner, 482 U.S. at 87; Bell, 441 U.S. at 460–61.

presumption applies, the burden shifts to the defendant to show (1) "legitimate, non-punitive interests justifying the conditions of [the detainee's] confinement" and (2) "that the restrictions imposed ... [are] not 'excessive' in relation to these interests." Id. at 935.

Legitimate, non-punitive governmental objectives include maintaining security, ensuring a detainee's presence at trial, and managing the detention facility effectively. Jones, 393 F.3d at 932 (citing Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir.1993)).  Moreover, there is no outright prohibition on housing SVPs in jails or prisons, Jones, 393 F.3d at 932, and "the actual treatment a prisoner [or detainee] experiences will depend upon predictions about him based upon his known history and the correctional officer's experience with him in the institutional setting." Cerniglia v. Cty. of Sacramento, 566 F.Supp.2d 1034, 1043–1044 (E.D. Cal. 2008). Detainees "whose history suggests a risk of escape or the likelihood of violence within the institution will be subjected to closer security than those whose history is free of violence and whose institutional history has been free of problems." Id.   But "generalized jail management concerns" are insufficient to rebut the presumption. Kitchens v. Pierce, 584 F. App'x 302, 304 (9th Cir. 2014).

The length of time a deprivation continues is relevant to determining whether the deprivation amounts to punishment. See Pierce v. Cty. of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008) (criminal detainee's length of stay in jail was one factor in determining whether Fourteenth Amendment violation had occurred); Endsley v. Luna, 750 F.Supp.2d 1074, 1101 (C.D. Cal. Aug. 5, 2010) (cramped conditions did not amount to punishment where Plaintiff was only exposed to them for "at most four hours per day"); Sisneroz v. Whitman, No. CV F 015058 2008 WL 4966220, at *9 (E.D. Cal. Nov. 20, 2008) (finding that "constitutional deprivation arises from systematic, substantial deprivation" and that some amenities "may be unavailable [to SVPs] for short periods of time for various reasons" without taking on constitutional proportions). Thus, "more restrictive" treatment that would violate the Fourteenth Amendment over the long term does not necessarily cause constitutional injury for the short term.

Here, there is no dispute that Plaintiff was and is a civil detainee as defined under the SVPA, and he was housed in the Fresno County Jail in conditions identical to, similar to, or more

restrictive than those in which his criminal counterparts are held.

### 1. Dayroom Time

Plaintiff argues that the County cannot demonstrate legitimate, non-punitive reasons for providing SVPA civil detainees the same dayroom access as criminal inmates. (ECF No. 31 at 22:19.) Plaintiff submits that Riverside County provides "extended dayroom time" to civil detainees. (Id. at 16:10-12.)

Here, the County submits the declaration of sergeant Nunley who declares that Plaintiff was afforded a minimum of 14 hours per day in the day room.[6] Because civil detainees must sleep and staffing levels are carefully scheduled to ensure safe conditions during sleeping and active hours, the jail maintains these hours of access to the day room. (ECF No. 32-1; Declaration of sergeant Matt Nunley ("Nunley Decl.) ¶ 24.) Based on the evidence presented, a genuine issue of material fact exists and Plaintiff is not entitled to summary judgment as a matter of law on this claim.

### 2. Shower Time

Plaintiff contends that his conditions of confinement were punitive in nature because he was afforded the same access to showers as the criminal inmate population, citing to "other Sheriff's Departments." (ECF No. 31 at 22:19-25.)

The County submits that Plaintiff was able to use the showers anytime he wanted between the hours of 7:00 A.M. until approximately 2:00 A.M. (Nunley Decl. ¶ 14.) Thus, Plaintiff has 19-hours per day of access to the showers. Nunley further declares that "[t]he County provides consistent access to the showers to ensure water and heating capacity, facility scheduling to

---

[6] Plaintiff "lodges a standing objection as to the evidentiary value/relevance of Sgt. Nunley's declaration/testimony" as he is "records supervisor" who "cannot attest to any facts related to any particular issue or policy." (ECF No. 35 at 20-21.) Plaintiff's objection is unfounded and overruled. Sergeant Nunley declaration signed under penalty of perjury specifically states that "his job responsibilities include overseeing the records of the Fresno County Jail Complex" and he has "personal knowledge of the matters stated in" the declaration of which he can truthfully thereto. (ECF No. 32-1, at 1.) Indeed, "at the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form[, but rather] "on the admissibility of its contents." See Sandoval v. Cnty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) (quoting Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)); see also Ramirez v. Victoria's Secret Stores, LLC, 2019 WL 6998784, at *2 (C.D. Cal. July 18, 2019) (overruling defendant's evidentiary objections based on relevance, lack of foundation, lack of personal knowledge, and speculation in ruling on motion for summary judgment).

14

prevent overcrowding and to ensure that civil detainees and inmates of different classifications are not exposed to each other for safety reasons. The jail does not have sufficient shower capacity to offer additional time to any population without reducing access to other populations." (Id.)

Based on the evidence presented, Plaintiff has not established that he is entitled to summary judgment as a matter of law that access to showers was punitive in nature.

### 3. Clothing Exchange

Plaintiff claims the jail did not allow him "access to clothing daily" or personal items such as "shoes, boots, and hats." (ECF No. 31 at 13:16-20.)

Sergeant Nunley declares that "[t]he County has a legitimate, non-punitive reasons for not permitting civil detainees to possess personal clothing items. Those reasons include, but are not limited to, protecting against the concealment of contraband and weapons within clothing, maintaining the visual identification of detainees, preventing the introduction of weapons and drugs into the jail, eliminating status and gang symbols or identification, and avoiding the creation of black markets within the jail which are a known source of conflict and violence. It is imperative that jail staff be able to immediately identify civil detainees and inmates for safety and security reasons within the jail." (Nunley Decl. ¶ 4.)

The County has set forth legitimate, non-punitive safety and security reasons in not allowing Plaintiff to wear personal clothing items. Accordingly, Plaintiff has not established that he is entitled to summary judgment as a matter of law on this claim.

### 4. Recreation and Visitations

Plaintiff contends that because he was subject to the same amount of recreational access And visitation as criminal inmates, such conditions were punitive in nature. (ECF No. 31 at 22:19-20.) Plaintiff argues that "the fact that the Defendant is using regulations designed for those held under criminal process, means the Defendant's reasoning is related to punitive conditions of confinement, even though the Defendant, in many instances, treated the Plaintiff as 'less than' a criminal detainee (recreation times offerings [sic] as an example)." (ECF No. 31 at 24:26-28; 25:1-2.)

With regard to recreation time, sergeant Nunley declares that "[t]he County has a

15

legitimate, non-punitive reasons for not providing civil detainees with more recreational/gym time than criminal defendants. Those reasons include, but are not limited to, already limited capacity to provide recreation/gym time to all civil detainees and inmates. There is limited recreation/gym space that is tightly scheduled from early morning until the middle of the night already in order to permit every civil detainee and criminal inmate three hours of recreational time. There are various classifications of inmates according to safety concerns who cannot be mixed for security reasons. There are insufficient resources of space and monitoring capability that preclude the County from being able to offer extra recreation/gym time to civil detainees as doing so would result in not being able to provide three hours of gym time to other inmates. Providing extra time to civil detainees is operationally impossible and is not punitive in nature." (Nunley Decl. ¶ 6.)

With regard to visitation time, sergeant Nunley declares "[t]he County has legitimate, non-punitive reasons for providing the same visitation policies to civil detainees as is provided to criminal inmates. Those reasons include, but are not limited to, using standardized visitation screening procedures to ensure that contraband is not introduced into the jail facility for the safety and security of everyone who is present within the jail.  The jail has limited visitation space requiring a carefully scheduled rotation among detainees and inmates to ensure that everyone has access to visits. Ensuring the safety and security of visitations is imperative to maintaining the safety and security of the jail facility and everyone present."  (Nunley Decl. ¶ 11.)

As stated above, the County submits that there is limited monitoring capability precluding the offering of extra recreational time; providing extra time to civil detainees is operationally impossible as the jail already operates a schedule from early morning through the middle of the night.  (Nunley Decl. ¶ 6.)  Thus, contrary to Plaintiff's argument, the County has submitted evidence in rebuttal of the presumption of punitive conditions.  Accordingly, Plaintiff is not entitled to summary judgment as a matter of law.

### 5.     Canteen Access

Plaintiff contends that while at Coalinga he was allowed to "go to canteen every day multiple times" and the fact that he was subject to the same canteen as criminal inmates such

16

restriction was punitive in nature.  (ECF No. 31 at 11, 13, 14, 22.)  Plaintiff argues that the County cannot overcome the presumption that this is a punitive condition because other counties have policies specific to SVP detainees.  (Id. at 22:19-25.)

In opposition, the County submits it has "limited supplies, security concerns regarding the accumulation of items and creating black markets within the jail and preventing disparities that historically have caused tension between detainees. Given the limited supplies and the necessity of permitting all inmates access to the commissary, it is not feasible with the County's limited resources to provide extra access to any group of detainees or inmates without taking such access away from another population within the jail." (Nunley Decl. ¶ 15.)

The County has submitted evidence that the civil detainees access to commissary was based on valid, non-punitive reasons not excessive in relation to the interest served by the policy. Accordingly, Plaintiff has not established that he is entitled to summary judgment on this claim.

**6.      Telephone Calls**

Plaintiff contends that he was not permitted to make or receive confidential telephone calls other than with an attorney, and submits that "other Sheriff's Departments" allow it. (ECF No. 31 at 14:6; 22:22-25.)

The County submits that it "has legitimate, non-punitive reasons for providing the same amount of access to telephones to civil detainees as criminal inmates. Those reasons include, but are not limited to, ensuring that all detainees and inmates are afforded access to telephones. The jail houses approximately 3,000 individuals and has a limited amount of telephones available for use. The County therefore must adhere to a schedule that ensures that everyone has access to telephones.  Providing additional access to the telephones to civil detainees would necessarily restrict access for criminal inmates who also have a right to use the telephone. The jail does not have sufficient availability of telephones to provide extra access to civil detainees." (Nunley Decl. ¶ 22.)

Thus, the County has submitted a justification that is reasonable, non-punitive, and not excessive in relation to the interest served; the jail cannot deprive criminal inmates of access to telephones to provide civil detainees extra access.  Consequently, Plaintiff is not entitled to

summary judgment on this claim.

### 7. Mail

Plaintiff alleges that he was subjected to a jail policy related to mail that was the same as that for those held under the criminal process; however, at Coalinga his personal and legal mail was confidential. (ECF NO. 31 at 13, 22.)

The County submits it "has legitimate, non-punitive reasons for monitoring the mail of civil detainees. The jail does not read the mail of civil detainees but instead opens it to ensure that no contraband has been included. This is a legitimate safety concern that must be followed to ensure the safety and security of the jail population and everyone working within the jail. (Nunley Decl. ¶ 20.)

Because the County has presented non-punitive justifications alleging serving a legitimate governmental interest, Plaintiff is entitled to summary judgment on this claim.

### 8. Restrictions on Religious Exercise

Plaintiff argues that the jail did not maintain policies or procedures specific to inmates being held under the SVPA for religious services. (ECF No. 31 at 14:17.) Plaintiff contends the County cannot overcome the presumption that this condition of confinement is punitive because Plaintiff has "point[ed] out" that more accommodating polices have been achieved by another Sheriff Department. (ECF No. 31 at 22:19-25.)

The Count submits it "has legitimate, non-punitive reasons for providing the same religious policies to civil detainees as criminal inmates. Those reasons include, but are not limited to, securing escort availability for religious services for safety and security reasons and maintaining consistent procedures to prevent incidents that could place anyone within the jail at risk of harm. (Nunley Decl. ¶ 12.)

Here, the relevant determination is whether the County has presented legitimate, non-punitive governmental reasons for applying the same religious accommodation policies to civil detainees and criminal inmates. To this end, the County submits that it must secure escort services for religious services and must maintain consistent procedures regarding religious accommodations to prevent incidents that could place anyone at risk of harm within the jail

during such escorts and services.  Because the County has presented non-punitive justifications to serve a legitimate governmental interest, Plaintiff is entitled to summary judgment on this claim.

### 9. Access to Reading Materials

Plaintiff contends that he was subjected to a jail policy related to both library (reading material) and law library access that was the same policy as that for those held under the criminal process while a civil detainee at the jail.

The County submits it provides access to the law library (and reading materials from the library) to any civil detainee or inmate who has an active criminal case or who has a pending case concerning conditions of confinement. County provided Plaintiff with access to the law library while he was housed at the jail. To the extent Plaintiff complains he did not have unlimited access to the law library, the County has legitimate, non-punitive reasons for restricting access to the library. Those reasons include, but are not limited to, safety and security concerns requiring supervision and scheduling to permit access to all civil detainees and criminal inmates in need of the law library. Providing unlimited availability to civil detainees would necessarily limit access to criminal inmates, who also have a legitimate need for accessing the law library." (Nunley Decl. ¶ 21.)

Because the County has presented non-punitive justifications alleging serving a legitimate governmental interest, Plaintiff is entitled to summary judgment on this claim.

### 10. Television

Plaintiff contends he was provided the same amount of television viewing time as criminal inmates while a civil detainee of the jail.  (ECF No. 31 at 11, 13, 20, 22.)  He claims that "deputies would always turn on the TV late and or turn off the TV early.  Deputies never did this with the criminal's TV." (ECF No. 31 11:22-24.)

The County disputes Plaintiff's contention, and submits that "Plaintiff was afforded a minimum of 14 hours per day in the day room, which has a television.  Civil detainees are able to choose what channel they wish to watch, with the exception that correctional officers are able to change the channel as needed for emergency broadcasts or avoiding conflicts between civil detainees regarding what channel to watch.  Correctional officers do not apply different rules to

19

civil detainees and criminal inmates regarding changing the channel." (Nunley Decl. ¶ 24.)

Because the County has presented legitimate, non-punitive justifications for allowing civil detainees 14 hours of television viewing time per day with minimal restrictions on content, Plaintiff is not entitled to summary judgment on this claim.

**11.    Access to Cleaning Supplies**

Plaintiff claims he was subjected to a jail policy related to access to cleaning supplies that was the same policy as those held under the criminal process while a civil detainee at the jail.

The County submits it "has legitimate, non-punitive reasons for not permitting civil detainees to possess extra cleaning supplies. Those reasons include, but are not limited to, legitimate security concerns about chemicals being weaponized or used for suicide, preventing the hoarding of supplies that could cause issues for plumbing. Civil detainees are provided cleaning supplies every morning.  The County does not have sufficient resources to provide extra supplies to any population within the jail." (Nunley Decl. ¶ 9.)

Because the County has submitted legitimate and non-punitive reasons for now allowing extra access to cleaning supplies, Plaintiff's motion for summary judgment must be denied.

**12.    Escorts and Restraints**

Plaintiff contends that he was subjected to a jail policy related to escorts and restraints that was the same policy as those held under the criminal process while a civil detainee at the jail.

The County submits it "has legitimate, non-punitive reasons for providing the same transfer policies and procedures to civil detainees and criminal inmates. Those reasons include, but are not limited to, maintaining order and security through consistent policies to prevent escapes, to protect staff and other detainees, to ensure public safety, and to eliminate confusion for jail staff who provide transport services to reduce the risk of procedural errors that could result in serious injury or death to someone. Officers trained on a single set of protocols are better able to respond reliably in emergencies. Furthermore, the jail operates with a limited budget and staff and maintaining separate transport systems would require significant additional resources that it does not possess.  A unified system allows the jail to maximize efficiency and to serve its entire population. In the busy jail environment, errors can occur and it is imperative to have clear

transfer protocols in place for everyone's safety and security. (Nunley Decl. ¶ 13.)

Thus, the County has presented legitimate, non-punitive reasons for providing the same polices and procedures in escorting and transporting civil detainees and criminal inmates, and Plaintiff's motion for summary judgment must be denied.

### 13.    Personal Items

Plaintiff contends that as a civil detainee at the jail he did not have access to personal items such as televisions, radios, coffee pots, or CD/DVD players.  (ECF No. 31 at 13:8-9.)

The County submits "has a legitimate, non-punitive reasons for not permitting civil detainees to possess electronics, kettles, and other such personal devices. Those reasons include, but are not limited to, preventing the introduction and concealment of contraband, drugs and weapons, preventing unauthorized communications that threaten the safety and security of other detainees, inmates and staff, preventing the use of personal communication devices being used to coordinate problematic activities within the jail, preventing the use of personal devices to injure other detainees, inmates, and staff, and eliminating status symbols that pose a threat of causing issues between civil detainees."  (Nunley Decl. ¶ 5.)

Thus, the County has presented legitimate, non-punitive reasons that are not excessive in relation to not providing access to the personal items listed above, and Plaintiff's motion for summary judgment must be denied.

### 14.    Restaurant/Grill Access

Plaintiff contends that as a civil detainee at Coalinga he has daily access to a restaurant/grill where he can order foot items from a traditional menu paid from his patient trust account.

The County submits that it "does not have a restaurant within the jail and therefore it is impossible to provide access to a 'grill' or 'restaurant' to civil detainees.  (Nunley Decl. ¶ 16.) Accordingly, it is therefore not possible to permit civil detainees access to a facility that does not exist, and Plaintiff is not entitled to summary judgment on this claim.

### 15.    Computers

Plaintiff contends that as a civil detainee at Coalinga he has daily access to a non-internet

21

computer lab for personal matters.

The County submits that it "does not have a computer lab and therefore it is not possible to offer access to a computer lab to civil detainees." (Nunley Decl. ¶ 23.)  Accordingly, it is therefore not possible to permit civil detainees access to a facility that does not exist, and Plaintiff is not entitled to summary judgment on this claim.

**16.     Extra Access to Laundry Services**

Plaintiff contends that he was subjected to the same jail policy related to laundry services as those held under the criminal process while a civil detainee at the jail.

The County submits it has legitimate, non-punitive reasons for not being able to provide Civil detainees with extra laundry services. Those reasons include, but are not limited to, limited laundry facility and machine availability with a large population of detainees and inmates to service.  Laundry is provided one time per week because the jail has approximately 3,000 inmates who go through laundry; the laundry services are on a tight schedule and the jail does not have capacity to provide extra laundry services to any population without eliminating laundry services to another population." (Nunley Decl. ¶ 10.)

The County has presented legitimate, non-punitive reasons that are not excessive in relation to failing to provide extra laundry services, and Plaintiff's motion for summary judgment must be denied.

**17.     Access to a Microwave and Refrigerator**

Plaintiff claims he was subjected to the same jail policy related to the denial of access to a microwave and refrigerator as those held under the criminal process while a civil detainee at the jail.

The County submits it "has legitimate, non-punitive reasons for not providing access to microwaves or refrigerators to civil detainees. These reasons include, but are not limited to, safety and security concerns regarding food safety violations, hoarding perishables, creating sanitation issues, preventing violence over shared resources and food. Controlling food distribution is a standard and best practice within jail settings. There are refrigerators that staff is able to access to safely store food for civil detainees who miss mealtimes." (Nunley Decl. ¶ 19.)

22

The County has presented legitimate, non-punitive reasons, and not excessive in relation to the lack of microwave and refrigerator, and Plaintiff's motion for summary judgment must be denied.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, Plaintiff has failed to meet his heavy burden of establishing that no genuine issue of material fact exists or that he is entitled to judgment as a matter of law. In opposition, the County disputes the facts alleged by Plaintiff and has set forth legitimate, non-punitive reasons for the various conditions of confinement of which Plaintiff claims that are not excessive in relation to the interest served.

Accordingly, it is HEREBY RECOMMENDED that Plaintiff's motion for summary judgment (ECF No. 31) be DENIED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 10, 2026**   _____

STANLEY A. BOONE
United States Magistrate Judge

23